UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
IN RE WORLD TRADE CENTER DISASTER SITE
LITIGATION
-----------------------------------------------------------------X
BRIAN KEVAN

                       Plaintiffs,

          -against-

A RUSSO WRECKING, INC.; AMEC
CONSTRUCTION MANAGEMENT, INC.; AMEC
EARTH & ENVORONMENTAL, INC.; ANTHONY
CORTESE SPECIALIZED HAULING LLC.;
ATLANTIC HEYDT CORP.; BERKEL &
COMPANY, CONTRACTORS, INC.; BIG APPLE
WRECKING & CONSTRUCTION CORP; BOVIS
LEND LEASE LMB, INC.; BREEZE CARTING
CORP.; BREEZE NATIONAL INC.; BRER-FOUR
TRANSPORTATION CORP.; BURO HAPPOLD
CONSULTING ENGINEERS, P.C.; C.B.
CONTRACTING CORP; CANRON
CONSTRUCTION CORP.; CORD CONTRACTING
CO., INC.; DAKOTA DEMO-TECH ; DIAMOND
POINT EXCAVATING CORP ; DIVERSIFIED
CARTING, INC.; DMT ENTERPRISE, INC.; EAGLE
LEASING & INDUSTRIAL SUPPLY, INC.; EAGLE
ONE ROOFING CONTRACTORS INC; EJ DAVIES,
INC.; EN-TECH CORP.; EVERGREEN RECYCLING
OF CORONA(EROC); EWELL W. FINLEY, P.C.;
EXECUTIVE MEDICAL SERVICES, P.C.; FLEET
TRUCKING, INC.; FRANCIS A. LEE EXTERIOR
RESTORATION, INC.; FTI TRUCKING, INC.;
GILSANZ, MURRAY, & STEFICEK, LLP,
GOLDSTEIN ASSOCIATES CONSULTING
ENGINEERS, PLLC.; HALLEN WELDING
SERVICE, INC.; H.P. ENVIRONMENTAL; KOCH
SKANSKA INC; LAQUILA CONSTRUCTION INC.;
LASTRADA GENERAL CONTRACTING CORP.;
LESLIE E. ROBERTSON ASSOCIATES
CONSULTING ENGIINEERS P.C.; LIBERTY
MUTUAL GROUP; LOCKWOOD, KESSLER &
BARTLETT, INC.; LUCIUS PITKIN, INC.; LZA
TECH-DIV OF THORTON TOMASETTI;

COMPLAINT

Jury Trial Demanded

Civ. Action No.:

MANAFORT BROTHERS INCORPORATED;
MAZZOCCHI WRECKING, INC.; HUDSON
MERIDIAN CONSTRUCTION GROUP, LLC F/K/A
MERIDIAN CONSTRUCTION CORP.;
MORETRENCH AMERICAN CORP.; MRA
ENGINEERING, PC; MUESER RUTLEDGE
CONSULTING ENGINEERS, INC; NACIREMA
INDUSTRIES INCORPORATED; NEW YORK
CRANE & EQUIPMENT CORP.; NICHOLSON
CONSTRUCTION COMPANY; PETER
SCALAMANDRE & SONS, INC.; PINNACLE
ENVIRONMENTAL CORP.;PLAZA
CONSTRUCTION CORP.;  PRO SAFETY
SERVICES LLC.; PT & L CONTRACTING CORP.;
ROBER SILMAN ASSOCIATES; ROBERT L.
GEROSA, INC.; RODAR ENTERPRISES, INC.;
ROYAL GM, INC; SAB TRUCKING INC.; SEMCOR
EQUIPMENT & MANUFACTURING CORP.;
SILVERITE CONTRACTING CORPORATION;
SIMPSON GUMPERTZ & HEGER INC.;
SKIDMORE, OWING & MERRILL LLP;
THORTON-TOMASETTI GROUP, INC.;
TORRETTA TRUCKING, INC.; TOTAL SAFETY
CONSULTING, L.L.C.; TUCCI EQUIPMENT
RENTAL CORP.; TULLY CONSTRUCTION CO.,
INC.; TURNER CONSTRUCTION COMPANY;
ULTIMATE DEMOLITION/CS HAULING (JOINT
VENTURE); VOLLMER ASSOCIATES LLP.;
WEIDLINGER ASSOCIATES, CONSULTING
ENGINEERS, P.C.; WHITNEY CONTRACTING
INC.; WOLKOW-BRAKER ROOFING CORP.; WSP
CANTOR SEINUK; YANNUZZI & SONS, INC;
YONKERS CONTRACTING COMPANY, INC.;
YORK HUNTER CONSTRUCTION, LLC;
ZIEGENFUSS DRILLING, INC., THE CITY OF
NEW YORK, THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY, DEUTSCHE BANK
TRUST COMPNAY AMERICAS.

                                            Defendants.

------------------------------------------------------------------X


        Plaintiffs BRIAN KEVAN, by his attorneys, states and alleges the following against

Defendants upon information and belief:

## I.   INTRODUCTION

1.     This action is to recover money damages for personal injuries, loss of income, medical expenses and other damages sustained by the Plaintiff as a result of the carelessness, recklessness and negligence of the Defendants, their agents, servants, and/or employees in failing to provide the Plaintiff with a safe place to work, in failing to provide the Plaintiff with proper and appropriate personal protective equipment and respiratory protection and in failing to warn plaintiff about exposure to toxins, fumes, substances, particulate matter, debris, chemicals and/or radiation during the time that the Plaintiff participated in rescue, recovery, construction, excavation, debris removal, and/or demolition operations at the World Trade Center Site and/or in other buildings, such as the 130 Liberty Street, The Deutsch Bank Building or at other locations or portions thereof following the terrorist attacks on the World Trade Center Site and the subsequent collapse of the buildings known as "One World Trade Center," "Two World Trade Center" and "Seven World Trade Center" on September 11, 2001.

2.     As a result of the foregoing and at all relevant times, Plaintiff was exposed to toxins, contaminants and other harmful smoke, fumes and airborne particulate matter at the World Trade Center Site and/or other buildings or locations or portions thereof, such as fiberglass, glass, silica, asbestos, lead, benzene, organic matter and other hazardous chemicals, substances and elements.  As a consequence of said exposures, the Plaintiff was injured.

## II.   JURISDICTION

3.     The United States District Court for the Southern District of New York has original jurisdiction over Plaintiff's claims pursuant to §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, 49 U.S.C. §40101 ("ATSSSA").

## III.  VENUE

4.        Pursuant to ATSSSA §408(b)(1), venue is proper in this judicial district.

## IV.  PARTIES

### A. PLAINTIFF

5.        Plaintiff BRIAN KEVAN ("Plaintiff") is an individual and a citizen of the State

of New York, residing at 3731 Fiddler Lane, Bethpage, NY 11714.

6.        In the period from approximately September 11, 2001 to approximaty September

1, 2007 the Plaitniff worked for the Fire Depatrment of New York  (FDNY) as a Fire Fighter at

the following locations:

     i)   The World Trade Center Site:

         (1) Location(s) at the pile and in all 4 quadrants.
         (2) From on or about September 11, 2001  until May 30, 2002;
         (3)  Approximately 12 hours per day; for
         (4) Approximately 174 days total.

     ii)  130 Liberty Street (the Deutsch Bank Building)
         (1) Locations(s) throughout the building
         (2) From Approximately August 18, 2007 until September 1, 2007
         (3) Approximately 12 hours per day; for
         (4) 1 day.

### B. DEFENDANTS

#### i.   A. RUSSO WRECKING

7.        Upon information and belief, at all relevant times, Defendant A. RUSSO

WRECKING (hereinafter referred to as "A. RUSSO") is/was a domestic business corporation

duly existing under and by virtue of the laws of the State of New York and transacting business

in the State of New York, including, at all relevant times, at the World Trade Center Site.

8.     Upon information and belief, at all relevant times, Defendant A. RUSSO is/was located at and maintained a primary place of business at 69 East Avenue Lawrence, NY 11559.

### ii.   AMEC CONSTRUCTION MANAGEMENT, INC.

9.     Upon information and belief, at all relevant times, Defendant AMEC CONSTRUCTION MANAGEMENT, INC. (hereinafter referred to as "AMEC") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

10.     Upon information and belief, at all relevant times, Defendant AMEC is/was located at and maintained a primary place of business at 1633 Broadway, New York, New York 10019.

### iii.   AMEC EARTH & ENVIRONMENTAL, INC.

11.     Upon information and belief, at all relevant times, Defendant AMEC EARTH & ENVIRONMENTAL, INC. (hereinafter referred to as "AMEC EARTH") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

12.     Upon information and belief, at all relevant times, Defendant AMEC EARTH maintained a primary place of business at 502 W. Germantown Pike, Plymouth Meeting, PA 19462 and designated CT Corporation System, located at 111 Eighth Avenue, 13th Floor, New York, NY 10011, as its agent for the service of process in the State of New York.

### iv.   ANTHONY CORTESE SPECIALIZED HAULING, LLC

13.     Upon information and belief, at all relevant times, Defendant ANTHONY CORTESE SPECIALIZED HAULING, LLC (hereinafter referred to as "ANTHONY

CORTESE") is/was a corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

14.     Upon information and belief, at all relevant times, Defendant ANTHONY CORTESE is/was located at and maintained a primary place of business at 3 Douglas Road, Sparta, NJ 07871.

15.     Upon information and belief, at all relevant times, Defendant ANTHONY CORTESE is/was a foreign corporation duly authorized to conduct business in the State of New York.

### v.   ATLANTIC HEYDT CORP

16.     Upon information and belief, at all relevant times, Defendant ATLANTIC HEYDT CORP (hereinafter referred to as "ATLANTIC") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

17.     Upon information and belief, at all relevant times, Defendant ATLANTIC is/was located at and maintained a primary place of business at 1281 Metropolitan Ave, Brooklyn, NY 11237.

### vi.   BERKEL & COMPANY CONTRACTORS, INC.

18.     Upon information and belief, at all relevant times, Defendant BERKEL & COMPANY CONTRACTORS, INC. (hereinafter referred to as "BERKEL") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

19.     Upon information and belief, at all relevant times, Defendant BERKEL is/was located at and maintained a primary place of business at 875 Avenue of the Americas, Suite 501, New York, NY 10001.

### vii.   BIG APPLE WRECKING & CONSTRUCTION CORP

20.     Upon information and belief, at all relevant times, Defendant BIG APPLE WRECKING & CONSTRUCTION ( "BIG APPLE") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

21.     Upon information and belief, at all relevant times, Defendant BIG APPLE is/was located at and maintained a primary place of business at 1379 Commerce Avenue, Bronx, NY 10461.

22.     At all relevant times, Defendant BIG APPLE is/was a foreign corporation duly authorized to conduct business in the State of New York.

### viii.   BOVIS LEND LEASE LMB, INC.

23.     At all relevant times, Defendant BOVIS LEND LEASE LMB, INC. (hereinafter referred to as "BOVIS LMB") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

24.     Upon information and belief, at all relevant times, Defendant BOVIS LMB is/was located at and maintained a primary place of business at 200 Park Avenue, New York, NY 10166.

### ix.   BREEZE CARTING CORP.

25.     At all relevant times, Defendant BREEZE CARTING CORP. (hereinafter referred to as "BREEZE") is/was a domestic business corporation duly existing under and by virtue of the

laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

26.     Upon information and belief, at all relevant times, Defendant BREEZE is/was located at and maintained a primary place of business at 31 Bay Street, Brooklyn, NY 11231.

### x.     BREEZE NATIONAL, INC.

27.     At all relevant times, Defendant BREEZE NATIONAL, INC. (hereinafter referred to as "BREEZE NATIONAL") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

28.     Upon information and belief, at all relevant times, Defendant BREEZE NATIONAL is/was located at and maintained a primary place of business at 31 Bay Street, Brooklyn, NY 11231.

### xi.     BRER-FOUR TRANSPORTATION CORP.

29.     At all relevant times, Defendant BRER-FOUR (hereinafter referred to as "BRER-FOUR") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

30.     Upon information and belief, at all relevant times, Defendant BRER-FOUR is/was located at and maintained a primary place of business at 33 Hewitt Street, Hicksville, NY 11801.

### xii.   BURO HAPPOLD CONSULTING ENGINEERS, P.C.

31.     At all relevant times, Defendant BURO HAPPOLD CONSULTING ENGINEERS, P.C. (hereinafter referred to as "BURO HAPPOLD") is/was a domestic professional corporation duly existing under and by virtue of the laws of the State of New York

and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

32.     Upon information and belief, at all relevant times, Defendant BURO HAPPOLD is/was located at and maintained a primary place of business at 105 Chambers Street, New York, NY 10007.

### xiii.   C.B. CONTRACTING CORP

33.     At all relevant times, Defendant C.B. CONTRACTING CORP (hereinafter referred to as "C.B.") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

34.     Upon information and belief, at all relevant times, Defendant C.B. is/was located at and maintained a primary place of business at 4118 Victory Blvd, Staten Island, NY 10314.

### xiv.   CANRON CONSTRUCTION CORP

35.     At all relevant times, Defendant CANRON CONSTRUCTION CORP (hereinafter referred to as "CANRON") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

36.     Upon information and belief, at all relevant times, Defendant CANRON maintained a primary place of business at 2215 S. York Rd., Ste. 208, Oakbrook, IL 60523  and designated CT Corporation System, located at 111 Eighth Avenue, 13th Floor, New York, NY 10011, as its agent for the service of process in the State of New York.

### xv.   WSP CANTOR SEINUK GROUP

37.     At all relevant times, Defendant WSP CANTOR SEINUK GROUP (hereinafter referred to as "CANTOR") is/was a domestic corporation duly existing under and by virtue of

the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

38.     Upon information and belief, at all relevant times, Defendant CANTOR is/was located at and maintained a primary place of business at 228 East 45th St., Harrison, New York, 10528.

39.     At all relevant times, Defendant CANTOR is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xvi.   CORD CONTRACTING CO., INC.

40.     At all relevant times, CORD CONTRACTING CO., (hereinafter referred to as "CORD") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

41.     Upon information and belief, at all relevant times, Defendant CORD is/was located at and maintained a primary place of business at 213 Roslyn Road, Roslyn Heights, NY 11577.

### xvii.  D'ONOFRIO GENERAL CONTRACTORS CORP.

42.     At all relevant times, D'ONOFRIO GENERAL CONTRACTORS CORP., (hereinafter referred to as "D'ONOFRIO") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

43.     Upon information and belief, at all relevant times, Defendant D'ONOFRIO is/was located at and maintained a primary place of business at 202 28th Street, Brooklyn, NY 11232.

### xviii.  DAKOTA DEMO-TECH

44.     At all relevant times, DAKOTA DEMO-TECH, (hereinafter referred to as "DAKOTA") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

45.     Upon information and belief, at all relevant times, Defendant DAKOTA is/was located at and maintained a primary place of business at 140 Old Northport Road, Kings Park, NY 11754.

46.     At all relevant times, DAKOTA is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xix.   DIAMOND POINT EXCAVATING CORP

47.     At all relevant times, DIAMOND POINT EXCAVATING CORP. ( "DIAMOND"), is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

48.     Upon information and belief, at all relevant times, Defendant DIAMOND is/was located at and maintained a primary place of business at 1134-32 57th Avenue, Flushing, NY 11355.

### xx.   DIEGO CONSTRUCTION, INC.

49.     At all relevant times, DIEGO CONSTRUCTION, INC., ( "DIEGO") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

50.     Upon information and belief, at all relevant times, Defendant DIEGO is/was located at and maintained a primary place of business at 1157 60TH Street, Brooklyn, NY 11209.

### xxi.   DIVERSIFIED CARTING, INC.

51.     At all relevant times, DIVERSIFIED CARTING, INC. ("DIVERSIFIED") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

52.     Upon information and belief, at all relevant times, Defendant DIVERSIFIED is/was located at and maintained a primary place of business at 28 Garfield Avenue, Bayshore, NY 11706.

### xxii.   DMT ENTERPRISE, INC.

53.     At all relevant times, DMT ENTERPRISE, INC. ( "DMT") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

54.     Upon information and belief, at all relevant times, Defendant DMT is/was located at and maintained a primary place of business at 255 Lake Avenue, Yonkers, NY 10701.

### xxiii.  EAGLE LEASING & INDUSTRIAL SUPPLY

55.     At all relevant times, EAGLE LEASING & INDUSTRIAL SUPPLY ( "EAGLE LEASING") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

56.     Upon information and belief, at all relevant times, Defendant EAGLE LEASING is/was located at and maintained a primary place of business at 1726 Flatbush Avenue, Brooklyn, NY 11210.

57.     At all relevant times, EAGLE LEASING is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xxiv.  EAGLE ONE ROOFING CONTRACTORS, INC.

58.     At all relevant times, EAGLE ONE ROOFING CONTRACTORS ( "EAGLE ONE") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

59.     Upon information and belief, at all relevant times, Defendant EAGLE ONE is/was located at and maintained a primary place of business at 18-60 45th Street, Astoria, NY 11105.

### xxv.  EJ DAVIES, INC.

60.     At all relevant times, EJ DAVIES, INC. ( "EJ DAVIES") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

61.     Upon information and belief, at all relevant times, Defendant EJ DAVIES is/was located at and maintained a primary place of business at 1837 Steinway Street, Astoria, NY 11105.

### xxvi.  EN-TECH CORP

62.     At all relevant times, EN-TECH CORP. ( "EN-TECH") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and

transacting business in the State of New York, including, at all relevant times, at the World

Trade Center Site.

63.     Upon information and belief, at all relevant times, Defendant EN-TECH is/was

located at and maintained a primary place of business at 800 Third Avenue, New York, NY

10022.

### xxvii.  EVERGREEN RECYCLING OF CORONA

64.     At all relevant times, EVERGREEN RECYLCING OF CORONA (

"EVERGREEN") is/was a domestic limited liability company duly existing under and by virtue

of the laws of the State of New York and transacting business in the State of New York,

including, at all relevant times, at the World Trade Center Site.

65.     Upon information and belief, at all relevant times, Defendant EVERGREEN

is/was located at and maintained a primary place of business at 127-50 Northern Blvd, Flushing,

NY 11368.

### xxviii. EWELL W. FINLEY, P.C.

66.     At all relevant times, EWELL W. FINLEY, P.C. is/was a domestic business

corporation duly existing under and by virtue of the laws of the State of New York and

transacting business in the State of New York, including, at all relevant times, at the World

Trade Center Site.

67.     Upon information and belief, at all relevant times, Defendant EWELL W.

FINLEY, P.C. is/was located at and maintained a primary place of business at 34-18 Northern

Boulevard, Long Island City, NY 11101.

### xxix.  FLEET TRUCKING, INC.

68.     At all relevant times, FLEET TRUCKING, INC.  ("FLEET") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

69.     Upon information and belief, at all relevant times, Defendant FLEET is/was located at and maintained a primary place of business at 457 Blake Avenue #1, Brooklyn, NY 11212.

### xxx.  FRANCIS A. LEE COMPANY, A CORPORATION

70.     At all relevant times, FRANCIS A. LEE COMPANY, A CORPORATION  ( "FRANCIS A. LEE COMPANY") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

71.     Upon information and belief, at all relevant times, Defendant FRANCIS A. LEE COMPANY is/was located at and maintained a primary place of business at 41 Bethpage Road, Hicksville, NY 11801.

### xxxi.  FTI TRUCKING

72.     At all relevant times, FTI TRUCKING  ( "FTI") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

73.     Upon information and belief, at all relevant times, Defendant FTI is/was located at and maintained a primary place of business at 14930 Powells Cove Boulevard, Whitestone, NY 12078.

74.     At all relevant times, FTI is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xxxii. GILSANZ MURRAY STEFICEK, LLP

75.     At all relevant times, GILSANZ MURRAY STEFICEK, LLP ("GILSANZ") is/was a domestic registered limited liability partnership duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

76.     Upon information and belief, at all relevant times, Defendant GILSANZ  is/was located at and maintained a primary place of business at 129 West 27th St, 5th Fl., New York, NY 10001.

### xxxiii. GOLDSTEIN ASSOCIATES CONSULTING ENGINEERS, PC

77.     At all relevant times, GOLDSTEIN ASSOCIATES CONSULTING ENGINEERS, PLLC ( "GOLDSTEIN") is/was a domestic professional corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

78.     Upon information and belief, at all relevant times, Defendant GOLDSTEIN is/was located at and maintained a primary place of business at 31 West 27th Street, New York, NY 10001.

79.     At all relevant times, GOLDSTEIN  is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xxxiv. HALLEN WELDING SERVICE, INC.

80.     At all relevant times, HALLEN WELDING SERVICE, INC. ( "HALLEN") is/was a domestic business corporation duly existing under and by virtue of the laws of the State

of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

81.     Upon information and belief, at all relevant times, Defendant HALLEN is/was located at and maintained a primary place of business at 45-24 37th Street, Long Island City, NY 11101.

### xxxv.  HP ENVIRONMENTAL

82.     At all relevant times, HP ENVIRONMENTAL ( "HP") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

83.     Upon information and belief, at all relevant times, Defendant HP is/was located at and maintained a primary place of business at 104 Elden Street, Suite 11, Herndon, VA 20170.

84.     At all relevant times, HP is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xxxvi. KOCH SKANSKA, INC.

85.     At all relevant times, KOCH SKANSKA, INC. ( "KOCH") is/was a foreign corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

86.     Upon information and belief, at all relevant times, Defendant KOCH is/was located at and maintained a primary place of business at 400 Roosevelt Avenue, Carteret, NJ 07008-3511.

### xxxvii. LAQUILA CONSTRUCTION INC.

87.     At all relevant times, LAQUILA CONSTRUCTION INC. ( "LAQUILA") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

88.     Upon information and belief, at all relevant times, Defendant LAQUILA is/was located at and maintained a primary place of business at 1590 Troy Avenue, Brooklyn, NY 11234.

### xxxviii.     LASTRADA GENERAL CONTRACTING CORP.

89.     At all relevant times, LASTRADA GENERAL CONTRACTING CORP. ( "LASTRADA") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

90.     Upon information and belief, at all relevant times, Defendant LASTRADA is/was located at and maintained a primary place of business at 118-20 29TH Avenue, College Point, NY 11354.

### xxxix. LESLIE E. ROBERTSON ASSOCIATES CONSULTING ENGINEER P.C.

91.     At all relevant times, LESLIE E. ROBERTSON ASSOCIATES CONSULTING ENGINEER P.C. ( "LESLIE E. ROBERTSON") is/was a domestic professional corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

92.     Upon information and belief, at all relevant times, Defendant LESLIE E. ROBERTSON is/was located at and maintained a primary place of business at 170 Hamilton Avenue, White Plains, NY 10601.

### xl.  LIBERTY MUTUAL GROUP

93.     At all relevant times, LIBERTY MUTUAL GROUP ( "LM") is/was a foreign corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

94.     Upon information and belief, at all relevant times, Defendant LM is/was located at 1818 Market Street, Philadelphia, PA 19103; 630 Morrison Road Suite 300, Gahanna, OH 43230; 3850 North Causeway Boulevard Suite 600, Metairie, LA 70002; 165 Dartmouth Street, Boston, MA 02116.

### xli.  LOCKWOOD KESSLER & BARTLETT, INC.

95.     At all relevant times, Defendant LOCKWOOD KESSLER & BARTLETT, INC. ( "LOCKWOOD") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

96.     Upon information and belief, at all relevant times, Defendant LOCKWOOD is/was located at and maintained a primary place of business at One Aerial Way, Syosset, New York 11791.

### xlii.  LUCIUS PITKIN, INC.

97.     At all relevant times, Defendant LUCIUS PITKIN, INC. ( "LUCIUS") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

98.     Upon information and belief, at all relevant times, Defendant LUCIUS is/was located at and maintained a primary place of business at 50 Hudson Street, New York, NY 10013-3389.

### xliii.  LZA TECH-DIV OF THORTON TOMASETTI

99.     At all relevant times, Defendant LZA TECH-DIV OF THORTON TOMASETTI ( "LZA") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

100.     Upon information and belief, at all relevant times, Defendant LZA is/was located at and maintained a primary place of business at 641 Avenue of the Americas, New York, NY 10011.

101.     At all relevant times, Defendant LZA is/was a foreign corporation duly authorized to conduct business in the State of New York.

### xliv.  MANAFORT BROTHERS, INC.

102.     At all relevant times, Defendant MANAFORT BROTHERS, INC. ( "MANAFORT") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

103.     Upon information and belief, at all relevant times, Defendant MANAFORT is/was located at 414 New Britain Ave., Plainville, CT 06062.

### xlv.  MAZZOCCHI WRECKING, INC.

104.     At all relevant times, Defendant MAZZOCCHI WRECKING, INC. ( "MAZZOCCHI") is/was a foreign business corporation duly existing under and by virtue of the

laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

105.    Upon information and belief, at all relevant times, Defendant MAZZOCCHI is/was located at and maintained a primary place of business at 32 Williams Parkway, East Hanover, New Jersey 07936 and designated CT Corporate Systems, located at 111 Eighth Avenue, 13th Floor, New York, NY 10011, as its agent for the service of process in the State of New York.

### xlvi.   HUDSON MERIDIAN CONSTRUCTION GROUP, LLC

106.    At all relevant times, Defendant HUDSON MERIDIAN CONSTRUCTION GROUP, LLC ( "HUDSON") is/was a domestic limited liability company duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

107.    Upon information and belief, at all relevant times, Defendant HUDSON is/was located at and maintained a primary place of business at 29 Grasmere Court, Staten Island, NY 10305.

### xlvii.  MORETRENCH AMERICAN CORPORATION

108.    At all relevant times, Defendant MORETRENCH AMERICAN CORPORATION ( "MORETRENCH") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

109.    Upon information and belief, at all relevant times, Defendant MORETRENCH is/was located at and maintained a primary place of business at 80 State Street, Albany, NY 12207.

### xlviii. MRA ENGINEERING P.C.

110.    At all relevant times, Defendant MRA ENGINEERING P.C. ( "MRA ENGINEERING") is/was a domestic professional corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

111.    Upon information and belief, at all relevant times, Defendant MRA ENGINEERING is/was located at and maintained a primary place of business at 600 Hempstead Turnpike, West Hempstead, NY 11552-1036.

### xlix. MUESER RUTLEDGE CONSULTING ENGINEERS, INC.

112.    At all relevant times, Defendant MUESER RUTLEDGE CONSULTING ENGINEERS, INC. ( "MUESER RUTLEDGE") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

113.    Upon information and belief, at all relevant times, Defendant MUESER RUTLEDGE is/was located at and maintained a primary place of business at 225 West 34th Street, New York, NY 10122.

114.    At all relevant times, Defendant MUESER RUTLEDGE is/was a foreign corporation duly authorized to conduct business in the State of New York.

### l. NACIREMA INDUSTRIES INCORPORATED

115.    At all relevant times, Defendant NACIREMA INDUSTRIES INCORPORATED ( "NACIREMA") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

116.    Upon information and belief, at all relevant times, Defendant NACIREMA is/was located at and maintained a primary place of business at 211 West 5th Street, Bayonne, NJ 07002.

### li.   NEW YORK CRANE & EQUIPMENT CORP.

117.    At all relevant times, Defendant NEW YORK CRANE & EQUIPMENT CORP. ( "NEW YORK CRANE") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

118.    Upon information and belief, at all relevant times, Defendant NEW YORK CRANE is/was located at and maintained a primary place of business at Brooklyn Navy Yard, Brooklyn, NY 11205.

### lii.   NICHOLSON CONSTRUCTION COMPANY

119.    At all relevant times, Defendant NICHOLSON CONSTRUCTION COMPANY ( "NICHOLSON") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

120.    Upon information and belief, at all relevant times, Defendant NICHOLSON is/was located at and maintained a primary place of business at 12 McClane Street, Cuddy, PA 15031 and designated CT Corporate Systems, located at 111 Eighth Avenue, 13th Floor, New York, NY 10011, as its agent for the service of process in the State of New York.

### liii.   PETER SCALAMANDRE & SONS, INC.

121.    At all relevant times, Defendant PETER SCALAMANDRE & SONS, INC. ( "PETER SCALAMANDRE") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

122.    Upon information and belief, at all relevant times, Defendant PETER
SCALAMANDRE is/was located at and maintained a primary place of business at 157 Albany
Avenue, Freeport, NY 11520.

### liv.   PINNACLE ENVIRONMENTAL CORP

123.    At all relevant times, Defendant PINNACLE ENVIRONMENTAL CORP (
"PINNACLE") is/was a domestic business corporation duly existing under and by virtue of the
laws of the State of New York and transacting business in the State of New York, including, at
all relevant times, at the World Trade Center Site.

124.    Upon information and belief, at all relevant times, Defendant PINNACLE is/was
located at and maintained a primary place of business at 64-54 Maurice Avenue, Maspeth, NY
11378.

### lv.   PLAZA CONSTRUCTION CORP.

125.    At all relevant times, Defendant PLAZA CONSTRUCTION CORP. ("PLAZA")
is/was a domestic business corporation duly existing under and by virtue of the laws of the State
of New York and transacting business in the State of New York, including, at all relevant times,
at the World Trade Center Site.

126.    Upon information and belief, at all relevant times, Defendant PLAZA is/was
located at and maintained a primary place of business at 260 Madison Avenue, New York, New
York 10016.

### lvi.   PRO SAFETY SERVICES, LLC

127.    At all relevant times, Defendant PRO SAFETY SERVICES, LLC ( "PRO
SAFETY SERVICES") is/was a domestic limited liability company duly existing under and by
virtue of the laws of the State of New York and transacting business in the State of New York,
including, at all relevant times, at the World Trade Center Site.

128.    Upon information and belief, at all relevant times, Defendant PRO SAFETY SERVICES is/was located at and maintained a primary place of business at 2500 Westchester Avenue, Purchase, NY 10577.

### lvii.   PT & L CONTRACTING CORP

129.    At all relevant times, Defendant PT & L CONTRACTING CORP ( "PT & L") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

130.    Upon information and belief, at all relevant times, Defendant PT & L is/was located at and maintained a primary place of business at 1 Kalisa Way,  Ste. 301, Paramus, NJ 07652.

### lviii.   ROBER SILMAN ASSOCIATES

131.    At all relevant times, Defendant ROBER SILMAN ASSOCIATES ( "ROBER SILMAN") is/was a domestic professional corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

132.    Upon information and belief, at all relevant times, Defendant ROBER SILMAN is/was located at and maintained a primary place of business at 88 University Place, New York, NY 10003.

### lix.   ROBERT L GEROSA, INC

133.    At all relevant times, Defendant ROBERT L GEROSA, INC ("ROBERT L GEROSA") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

134.     Upon information and belief, at all relevant times, Defendant ROBERT L GEROSA is/was located at and maintained a primary place of business at 122 West Sheffield Avenue, Englewood, NJ 07631.

### lx.   RODAR ENTERPRISES, INC.

135.     At all relevant times, Defendant RODAR ENTERPRISES, INC. ( "RODAR ENTERPRISES") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

136.     Upon information and belief, at all relevant times, Defendant RODAR ENTERPRISES is/was located at and maintained a primary place of business at 240 Van Wagner Road, Poughkeepsie, NY 12603.

### lxi.   ROYAL GM INC.

137.     At all relevant times, Defendant ROYAL GM INC. ( "ROYAL") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

138.     Upon information and belief, at all relevant times, ROYAL is/was located at and maintained a primary place of business at 112 Clarke Avenue, Staten Island, NY 10306.

139.     At all relevant times, Defendant ROYAL is/was a foreign corporation duly authorized to conduct business in the State of New York.

### lxii.   SAB TRUCKING INC.

140.     At all relevant times, Defendant SAB TRUCKING INC. ( "SAB TRUCKING") is/was a domestic business corporation duly existing under and by virtue of the laws of the State

of New York and transacting business in the State of New York, including, at all relevant times,

at the World Trade Center Site.

141.    Upon information and belief, at all relevant times, SAB TRUCKING is/was

located at and maintained a primary place of business at 7 Pironi Court, Woodbury, NY 11797.

### lxiii.  SAFEWAY ENVIRONMENTAL CORP

142.    At all relevant times, Defendant SAFEWAY ENVIRONMENTAL CORP  (

"SAFEWAY ENVIRONMENTAL") is/was a domestic business corporation duly existing under

and by virtue of the laws of the State of New York and transacting business in the State of New

York, including, at all relevant times, at the World Trade Center Site.

143.    Upon information and belief, at all relevant times, SAFEWAY

ENVIRONMENTAL is/was located at and maintained a primary place of business at 1379

Commerce Avenue, Bronx, NY 10461.

### lxiv.  SEMCOR EQUIPMENT AND MANUFACTURING CORPORATION

144.    At all relevant times, Defendant SEMCOR EQUIPMENT AND

MANUFACTURING CORPORATION ( "SEMCOR EQUIPMENT") is/was a foreign business

corporation duly existing under and by virtue of the laws of the State of New York and

transacting business in the State of New York, including, at all relevant times, at the World

Trade Center Site.

145.    Upon information and belief, at all relevant times, SEMCOR EQUIPMENT

is/was located at and maintained a primary place of business at 14 Madison Street, Keyport, NJ

07735.

### lxv.  SILVERITE CONTRACTORS

146.    At all relevant times, Defendant SILVERITE CONTRACTORS ("SILVERITE")

is/was a domestic corporation duly existing under and by virtue of the laws of the State of New

York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

147.    Upon information and belief, at all relevant times, SILVERITE is/was located at and maintained a primary place of business at 520 Old Country Road, Hicksville, NY 11801.

148.    At all relevant times, Defendant SILVERITE is/was a foreign corporation duly authorized to conduct business in the State of New York.

### lxvi.  SIMPSON GUMPERTZ & HEGER INC

149.    At all relevant times, Defendant SIMPSON GUMPERTZ & HEGER INC ( "SIMPSON GUMPERTZ") is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

150.    Upon information and belief, at all relevant times, Defendant SIMPSON GUMPERTZ is/was located at and maintained a primary place of business at 875 Avenue of the Americas, Suite 501, New York, NY 10001.

### lxvii.  SKIDMORE OWINGS & MERRILL, LLP

151.    At all relevant times, Defendant SKIDMORE OWINGS & MERRILL, LLP ( "SKIDMORE OWINGS") is/was a domestic registered limited liability partnership duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

152.    Upon information and belief, at all relevant times, Defendant SKIDMORE OWINGS is/was located at and maintained a primary place of business at 14 Wall Street, New York, NY 10005-2101.

153.

### lxviii. THORTON-TOMASETTI GROUP

154.    At all relevant times, Defendant THORTON-TOMASETTI GROUP (

"TOMASETTI") is/was a domestic corporation duly existing under and by virtue of the laws of

the State of New York and transacting business in the State of New York, including, at all

relevant times, at the World Trade Center Site.

155.    Upon information and belief, at all relevant times, Defendant TOMASETTI

is/was located at and maintained a primary place of business at 641 Avenue of the Americas,

New York, NY 10011.

156.    At all relevant times, Defendant TOMASETTI is/was a foreign corporation duly

authorized to conduct business in the State of New York.

### lxix.  TOTAL SAFETY CONSULTING, L.L.C.

157.    At all relevant times, Defendant TOTAL SAFETY CONSULTING, L.L.C. (

"TOTAL SAFETY") is/was a domestic limited liability company duly existing under and by

virtue of the laws of the State of New York and transacting business in the State of New York,

including, at all relevant times, at the World Trade Center Site.

158.    Upon information and belief, at all relevant times, Defendant TOTAL SAFETY

is/was located at and maintained a primary place of business at 5 Court Square, Long Island City,

NY 11101.

### lxx.  TUCCI EQUIPMENT RENTAL CORP.

159.    At all relevant times, Defendant TUCCI EQUIPMENT RENTAL CORP. (

"TUCCI EQUIPMENT") is/was a domestic business corporation duly existing under and by

virtue of the laws of the State of New York and transacting business in the State of New York,

including, at all relevant times, at the World Trade Center Site.

160.     Upon information and belief, at all relevant times, Defendant TUCCI EQUIPMENT is/was located at and maintained a primary place of business at 3495 Rombouts Avenue, Bronx, NY 10475.

### lxxi.  TULLY CONSTRUCTION CO., INC.

161.     At all relevant times, Defendant TULLY CONSTRUCTION CO., INC. ( "TULLY INC") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

162.     Upon information and belief, at all relevant times, Defendant TULLY INC is/was located at and maintained a primary place of business at 127-50 Northern Boulevard, Flushing, New York 11368.

### lxxii.  TURNER CONSTRUCTION COMPANY

163.     At all relevant times, Defendant TURNER CONSTRUCTION COMPANY ( "TURNER") is/was a domestic business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

164.     Upon information and belief, at all relevant times, Defendant TURNER is/was located at and maintained a primary place of business at 375 Hudson Street, New York, New York 10014.

### lxxiii. ULTIMATE DEMOLITIONS/CS HAULING

165.     At all relevant times, Defendant ULTIMATE DEMOLITIONS/CS HAULING ( "ULTIMATE DEMOLITIONS") is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

166.    Upon information and belief, at all relevant times, Defendant ULTIMATE DEMOLITIONS is/was located at and maintained a primary place of business at 500 New Street, Oceanside, NY 11572.

167.    At all relevant times, Defendant ULTIMATE DEMOLITIONS is/was a foreign corporation duly authorized to conduct business in the State of New York.

### lxxiv. VOLLMER ASSOCIATES, LLP

168.    At all relevant times, Defendant VOLLMER ASSOCIATES, LLP is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

169.    Upon information and belief, at all relevant times, Defendant VOLLMER ASSOCIATES, LLP is/was located at and maintained a primary place of business at 50 West 23rd St., New York, NY 10010.

170.    At all relevant times, Defendant VOLLMER ASSOCIATES, LLP is/was a foreign corporation duly authorized to conduct business in the State of New York.

### lxxv. WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, P.C.

171.    At all relevant times, Defendant WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, P.C. is/was a foreign business corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

172.    Upon information and belief, at all relevant times, Defendant WEIDLINGER ASSOCIATES CONSULTING ENGINEERS, P.C. is/was located at and maintained a primary place of business at 375 Hudson Street, 12th Floor, New York, NY 10014.

### lxxvi. WHITNEY CONTRACTING INC.

173.     At all relevant times, Defendant WHITNEY CONTRACTING INC. is/was a

domestic corporation duly existing under and by virtue of the laws of the State of New York and

transacting business in the State of New York, including, at all relevant times, at the World

Trade Center Site.

174.     Upon information and belief, at all relevant times, Defendant WHITNEY

CONTRACTING INC. is/was located at and maintained a primary place of business at One

Liberty Plaza, New York, NY 10006.

175.     At all relevant times, Defendant WHITNEY CONTRACTING INC. is/was a

foreign corporation duly authorized to conduct business in the State of New York.

### lxxvii. WOLKOW-BRAKER ROOFING CORP.

176.     At all relevant times, Defendant WOLKOW-BRAKER ROOFING CORP. is/was

a domestic business corporation duly existing under and by virtue of the laws of the State of New

York and transacting business in the State of New York, including, at all relevant times, at the

World Trade Center Site.

177.     Upon information and belief, at all relevant times, Defendant WOLKOW-

BRAKER ROOFING CORP. is/was located at 18 Court Street, Suite 2200, Brooklyn, NY 1241.

### lxxviii. YONKERS CONTRATING COMPANY, INC.

178.     At all relevant times, Defendant YONKERS CONTRATING COMPANY, INC.

is/was a domestic business corporation duly existing under and by virtue of the laws of the State

of New York and transacting business in the State of New York, including, at all relevant times,

at the World Trade Center Site.

179.     Upon information and belief, at all relevant times, Defendant YONKERS CONTRATING COMPANY, INC. is/was located at and maintained a primary place of business at 969 Midland Avenue, Yonkers, NY 10704.

### lxxix. YORK HUNTER CONSTRUCTION, LLC

180.     At all relevant times, Defendant YORK HUNTER CONSTRUCTION, LLC is/was a foreign limited liability company duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

181.     Upon information and belief, at all relevant times, Defendant YORK HUNTER CONSTRUCTION, LLC is/was located at and maintained a primary place of business at 107 Old Goshen Road, South Seaville, NJ 08246.

### lxxx. ZIGENFUSS DRILLING, INC.

182.     At all relevant times, Defendant ZIGENFUSS DRILLING, INC. is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

183.     Upon information and belief, at all relevant times, Defendant ZIGENFUSS DRILLING, INC. designated CT Corporate Systems located at 111 Eighth Avenue, 13th Floor, New York, NY 10011 as its agent for service of process in the State of New York.

184.     At all relevant times, Defendant ZIGENFUSS DRILLING, INC. is/was a foreign corporation duly authorized to conduct business in the State of New York.

### lxxxi. THE CITY OF NEW YORK

185.     Defendant, THE CITY OF NEW YORK, was and still is a municipal corporation organized and existing under the laws of the State of New York.

186.    On and after September 11, 2001 until May 30, 2002, the City entered the premises known as the World Trade Center site and in conjunction with the Porth Authority of New York and New Jersey ("PA"), the Prime Contractors, subcontractors and others, operated the premises known as the World Trade Center site.

187.    On and after September 11, 2001, until May 30, 2002, the City entered the premises known as the World Trade Center site and in conjunction with the Porth Authority of New York and New Jersey ("PA"), the Prime Contractors, subcontractors and others, maintained the premises known as the World Trade Center site.

188.    On and after September 11, 2001, until May 30, 2002, the City entered the premises known as the World Trade Center site and in conjunction with the Porth Authority of New York and New Jersey ("PA"), the Prime Contractors, subcontractors and others, managed the premises known as the World Trade Center site.

189.    On and after September 11, 2001, until May 30, 2002, the City entered the premises known as the World Trade Center site and in conjunction with the Porth Authority of New York and New Jersey ("PA"), the Prime Contractors, subcontractors and others, controlled the premises known as the World Trade Center site.

190.    On and after September 11, 2001, until May 30, 2002, the City entered the premises known as the World Trade Center site and in conjunction with the Porth Authority of New York and New Jersey ("PA"), the Prime Contractors, subcontractors and others, inspected the premises known as the World Trade Center site.

191.   On and after September 11, 201, through May 30, 2002, the City, through the Department of Design and Construction ("DDC"), was the general contractor responsible for the construction, debris removal, renovation, alteration, demolition, safety and all work performed at the World Trade Center site.

192.   The DDC was in the business of overseeing construction, debris removal, renovation, alteration, demolition and construction site safety work for all City construction projects.

193.   In the event of a building collapse, such as that occasionally occur in the City, the DDC would routinely be deployed to the scene by the City.

194.   Any and all work performed at the World Trade Center site by the City or its agencies was for the benefit of the PA and the other World Trade Center Defendants.

195.   The City's work at the World Trade Center site was voluntary.

196.   On or after September 11, 2001, the City was a general contractor and/or construction manager responsible for the demolition, construction, debris removal, renovation, alteration, environmental testing, air monitoring and/or, worker safety and health for all work performed at the premises and/or portion of the premises known as the World Trade Center site.

197.   On or after September 11, 2001, the City functioned as a subcontractor for the demolition, construction, debris removal, renovation, alteration, environmental testing, air monitoring and/or, worker safety and health for all work performed at the premises and/or portion of the premises known as the World Trade Center site.

198.   On and after September 11, 2001, in its capacity as a municipality, the City was responsible for the demolition, construction, debris removal, renovation, alteration and/or safety and health for all work performed at the premises and/or a portion of the premises, known as the World Trade Center site.

199.    On and after September 11, 2001, the City employed construction companies, contractors and/or subcontractors responsible for the demolition, construction, debris removal, renovation, alteration, environmental testing, air monitoring and/or safety and health work performed at the premises and/or portion of the premises, known as the World Trade Center site.

200.    On and after September 11, 2001, the City was a supervisor responsible for the demolition, construction, debris removal, renovation, alteration, environmental testing, air monitoring, and/or safety and health of all works and all work performed at the premises and/or portion of the premises, known as the World Trade Center site.

201.    On and after September 11, 2001, the City subcontracted, and/or retained Plaintiff's employer to perform certain work, labor and/or services at the premises and/or portion of the premises, known as the World Trade Center site.

202.    ON and after September 11, 2002, the City was the agent of the PA.

203.    The City of New York, through the FDNY  and DDC, was the sole incident commander at the WTC site.

204.    The City, through the FDNY and DDC, exercised complete and total control of the World Trade Center site.

205.    At all times herein mentioned, the City exercised direction and control of the World Trade center site over contractors responsible for the construction, debris removal, renovation, alternation demolition and all work performed at the site.

206.    A Petition by Order to Show Cause to file a Notice of Claim against the City of New York was filed in the Supreme Court of the State of New York, New York County and the Petition is pending.

### lxxxii. THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

207.    At all relevant times, Defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY is/was a Public Authority, organized and existing pursuant to the Unconsolidated Laws of the State of New York and duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at the World Trade Center Site.

208.    Upon all relevant time, Defendant THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY is/was located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007.

209.    At all relevant times, Defendant, THE PORT AUTOHRITY OF NEW YORK AND NEW JERSEY, is/was a foreign quasi-corporation duly authorized to conduct business in the State of New York.

210.    At all times herein, mentioned, Defendant, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, was and is the fee owner of the World Trade Center Site.

211.    Prior to and subsequent to September 11, 2001, the Port Authority, operated the World Trade Center Site.

212.    On and after September 11, 2001, the Port Authority, operated the World Trade Center Site.

213.    On and after September 11, 2001, the PA had certain rights, obligations and/or responsibilities under the lease(s) to maintain and/or repair the World Trade Center Site.

214.    On and after September 11, 2001, the PA, as the net lessor of the World Trade Center Site, had a duty under New York law to maintain, repair and control the World Trade Center sit and is thus liable for the injuries suffered by Plaintiff at the site.

215.    The PA exercised some of those obligations after September 11, 2001 by overseeing, supervision and participating in the work at the World Trade Center site.

216.    At all times herein mentioned, the PA exercised direction and control at the World Trade Center Site over contractors responsible for the construction, renovation, alteration, demolition and all work performed at the site.

217.    A Notice of Claim was served upon THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY pursuant to Chapter 179, § 7 of the Unconsolidated Laws of the Staet of New York. The Notice of Claim stated the name, and post office address of the Claimant and Claimant's attorney, the nature of the claim, the time when, the place where, and the matter in which the claim arose, land the items of damages or injuries claims. Since the Notice of claim was served THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, has not adjusted this claim.

### lxxxiii. DEUTSCHE BANK TRUST COMPANY AMERICAS

218.    At all relevant times, Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS is/was a domestic corporation duly existing under and by virtue of the laws of the State of New York and transacting business in the State of New York, including, at all relevant times, at 130 Liberty Street, New York, NY 10007 and 60 Wall Street, New York, NY10005.

219.    At all relevant times, Defendant DEUTSCHE BANK TRUST COMPANY AMERICAS is/was a foreign corporation duly authorized to conduct business in the State of New York.

220.    At all times herein, mentioned, Defendant, DEUTSCHE BANK TRUST COMPANY AMERICAS is/was and is the fee owner of 130 Liberty Street, New York, NY 1007 (The Deutsche Bank Building).

221.    On and after September 11, 2001, DEUTSCHE BANK TRUST COMPANY AMERICAS oversaw and participated in the clean-up, construction, renovation, alteration and demolition work taking place at 130 Liberty Street.

222.    On and after September 11, 2001, DEUTSCHE BANK TRUST COMPANY AMERICAS hired contractors to perform the clean-up, construction, renovation, alteration and demolition work taking place at 130 Liberty Street.

223.    On and after September 11, 2001, DEUTSCHE BANK TRUST COMPANY AMERICAS controlled the clean-up, construction, renovation, alteration and demolition work taking place at 130 Liberty Street.

224.    On and after September 11, 2001, DEUTSCHE BANK TRUST COMPANY AMERICAS failed to provide Plaintiff with the proper respiratory equipment for work performed at 130 Liberty Street.

225.    On and after September 11, 2001, DEUTSCHE BANK TRUST COMPANY AMERICAS failed to warn Plaintiff of the respiratory hazards at 130 Liberty Street.


## V.   PLAINTIFF'S CLAIM IS NOT TIME-BARRED

226.    Plaintiff's claim is not time-barred with respect to the non-municipal Defendants because Plaintiff's claim was commenced within three (3) years of the accrual of Plaintiff's cause of action pursuant to McKinney's CPLR 214-c:

> [T]he three year period within which an action to recover damages
> for personal injury or injury to property caused by the latent effects
> of exposure to any substance or combination of substances, in any

form, upon or within the body or upon or within property must be
commenced shall be computed from the date of discovery of the
injury by the plaintiff or from the date when through the exercise
of reasonable diligence such injury should have been discovered
by the plaintiff, whichever is earlier.

227.    Plaintiff's claims are not time-barred with respect to THE PORT AUTOHRITY

OF NEW YORK AND NEW JERSEY because Plaintiff's claims were commenced within one

(1) year of the accrual of Plaintiff's cause of action pursuant to N.Y. Unconsol. Laws § 7107.

228.    Plaintiff's claims are not time-barred with respect to THE CITY OF NEW YORK

because Plaintiff's claims were commenced within one year and ninety days of the accrual of

Plaintiff's cause of action pursuant to N.Y.Gen.Mun. Law § 50-i.(1).

229.    Plaintiff was diagnosed with Lymphoma on or about June 19, 2019.

230.    Plaintiff's treating physician first connected this injury to Plaintiff's World Trade

Center Work on or about June 19, 2019.

231.    Plaintiff's claim was commenced less than three years after the accrual of his

claim against the non-municipal Defendants, less than one year after the accrual of his claim

against THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY and less than one year

and ninety days against THE CITY OF NEW YORK. Therefore, Plaintiff's claims are timely

commenced.

## VI.   FACTS SUPPORTING PLAINTIFF'S CONTENTION THAT THE LISTED DEFENDANTS ARE NOT IMMUNE FROM LIABILITY

### A.    THE DEFENDANTS DO NOT SHARE IN PURPORTED FEDERAL IMMUNITY FOR THEIR ACTS AND OMISSIONS AT THE WTC SITE

232.    Absent an unprecedented expansion of current law that Congress surely did not

intend, the limited involvement of federal officials at the WTC site is insufficient to confer

federal immunity on these non-federal defendants. Both the federal Stafford Act and the Federal

Tort Claims Act provide no immunity for conduct in violation of non-discretionary duties and statutes.

233.    After the tragedy of September 11, 2001 occurred, the scope and complexity of the WTC disaster required the City to assume management and coordination and control of work and debris removal operations at the WTC Site. The City's Department of Design and Construction ("DDC") contracted with four construction managers ("CMs"), Bovis Lend Lease LMB ("Bovis"), Turner Construction Company/Plaza Construction Corp. ("Turner/Plaza"), Tully Construction Co., Inc. ("Tully") and AMEC Construction Management, Inc. ("AMEC"), who in turn hired tiers of sub-contractors to perform the debris removal and assist with recovery operations.

234.    The WTC site was divided into four quadrants, or "zones." Each construction manager was in control of a "zone" of the WTC Site. Tully controlled Zone 1 in the eastern quadrant of the site. Bovis controlled Zone 2 in the southwest quadrant of the site. AMEC controlled Zone 3 in the northwest quadrant of the site. Turner/Plaza controlled Zone 4 in the northern quadrant of the site.

235.    The City and its contractors initiated, undertook, oversaw, supervised, controlled and completed the debris removal from the 16-acre World Trade Center site.  The City financed the work of the CMs.  The four CMs, as well as the subcontractors, were not volunteers. Rather, they were paid tens of millions of dollars by the City, through checks issued by the City's Comptroller's office, for the work they performed at and around the WTC site beginning September 11, 2001.

236.    A Health and Safety plan was managed and enforced by Liberty Mutual under a DDC Contract.[1]  The City, its contractors and the Port Authority collected information necessary for the enforcement of health and safety laws, rules and regulations at the WTC Site.

237.    The City's contractors accepted responsibility for the WTC Project Environmental Health and Safety ("WTC EH&S") Plan enforcement.[2]   Each CM and its subcontractors were responsible for implementation, enforcement and compliance with all aspects of this WTC EH&S Plan.[3]

238.    Notably, Mayor Giuliani, Governor Pataki and/or President Bush suspended no federal, state or local laws with respect to protection of workers.  New York State Labor Law § 200, New York State Labor Law § 241 *et seq*., including §241(6), GML § 205-a and GML § 205-e, among other statutes and regulations, were neither suspended nor revoked on or after September 11, 2001.[4]

239.    Because no federal, state or local laws were suspended or revoked with respect to the protection of workers and the provision of adequate safety measures for all workers on the World Trade Center site and related sites[5], the contracts with the CMs emphasized the primary CMs' obligations to comply with said laws:

>    Sec. 2.2.  The Contractor *shall* comply with all local, State and
>    Federal laws, rules, regulations and orders issued pursuant to any

---

[1] *See* FEMA-NY00067895.

[2] "Each prime contractor and their subcontractors are responsible for implementation, enforcement and compliance with all aspects of this plan." *See* CITYCM3-00041686.

An organizational chart included in the ES&H Plan depicts the DDC at the very top of a complex hierarchy of agencies and contractors charged with oversight.  *See* CITYCM3-00041687.

[3] *See* EH&S Plan at PA-CMO3-0000057.

[4] *Id.*

[5] Including the Medical Examiners' Office, the Barges, Transfer Points and Fresh Kills Landfill.

Emergency Declaration applicable to this Agreement and to the work to be done hereunder.[6]  (Emphasis added)

240.    Accordingly, defendants were required to comply with New York State Labor Laws §§ 200 and 241, including §241(6) and NY State Municipal Law §205a-e at all times on and after September 11, 2001.[7]

241.    The contracts make clear that the four primary contractors were responsible for ensuring the safety of all of those –persons lawfully present at the WTC Site.  Their responsibility was not limited to the primary contractors' own employees:

> Sec. 15.2 During the performance of the Work and up to the date of Final Acceptance, the Contractor shall take all reasonable precautions to protect the persons and property of the City *and of others* from damage, loss or injury resulting from the Contractor's and/or its Subcontractors' operations under this Contract. The Contractor's obligation to protect shall include the duty to provide, place or replace and adequately maintain at or about the Site suitable and sufficient protection…[8]. (Emphasis added).

242.    In addition, the primary contractors were obligated to ensure that their subcontractors were complying with federal, state and local safety regulations.  Under Sec. 11.4.20, the primary contractors were to "***monitor compliance by the Subcontractors with the following requirements applicable to the Work: (1) New York State Labor Law… .***"[9] (Emphasis added).

243.    Defendants' conduct was not subject to the discretion and control of any federal official or agency.

244.    The Occupational Safety And Health Administration (OSHA) did not enforce its regulations at the World Trade Center Site, nor supervise nor control the work done there. OSHA

---

[6] *See* CITYCM3-00030575 (Emphasis in the original).

[7] *See* Contracts for Debris Removal - CITY CM3-00030589.

[8] *See* CITY CM3-00014463.

[9] *See* CITY CM3-00030589.

did not and could not enforce any of its standards on the WTC worksite *by agreement with the City of New York and the contractors*, reportedly at the City's direction.[10]  Although OSHA standards were applicable, it was the Defendants, not OSHA, who were tasked with and accepted the responsibility for site safety code enforcement.

245.    The Federal Emergency Management Agency (FEMA) neither controlled nor supervised the work done at the World Trade Center Site. On September 14, 2001, President George W. Bush declared that a national state of emergency had existed since the September 11, 2001 attacks. The President's declaration activated the provisions of the Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") (42 U.S.C. Sec. 5121, *et seq*.).[11]  FEMA's primary role was to provide reimbursement to the New York City and New York State agencies for the work performed.[12] FEMA was not in control of and did not direct the work of the City or its contractors at the World Trade Center site.[13] FEMA provided hundreds of millions of dollars to the City for the recovery effort and FEMA itself acknowledged the City's leadership role in the recovery.[14]

---

[10] "Both OSHA and PESH, … *are present on the site on a consultative basis. They do not have the power*, at this point, other than the power of persuasion, to enforce safety and health regulations and rules." *See* Public Hearing on Air Quality and Other Environmental Public Health Matters Resulting from the 9/11/01 Tragedy: November 26, 2001, at p. 326.

[11] One of the Stafford Act's purposes is to "spread the risk of the cost of major disasters from the citizens of the disaster-stricken community to the citizens of the entire country." State of Hawaii v. Federal Emergency Management Agency, 294 F.3d 1152, 1160 (9th Cir., 2002).

[12] As FEMA commented: "Debris removal operations are under the direction of the DDC. FEMA is responsible for administering the Federal Funds that will be granted to the State of New York and various applicants under this disaster. The City … is a sub-grantee." *See* CityCM3-00033810.

[13] "The Public Assistance Program is voluntary. If all eligibility requirements are met and you wish to seek federal reimbursement, you must adhere to the program guidelines." FEMA-NY00042518: State Emergency Management Office Federal Emergency Management Agency Public Assistance Program - Applicant's Handbook.

[14] "[A]s the lead entity for the response effort, the City will determine the necessity and priority of debris removal from both private and public property." *See* AMECM3-000000660: October 16, 2001 FEMA Correspondence.

246.    The Army Corp of Engineers ["ACOE"] neither controlled nor supervised the work done at the World Trade Center Site. Following 9/11, the U.S. Army Corps of Engineers ["ACOE"] only provided technical assistance at specific times when requested and directed by the City.[15] The United States Army Corp of Engineers did not activate any personnel under the mission assignments for debris removal at Ground Zero as of September 17, 2001.[16] The ACOE was not involved with the stabilization of the slurry wall, which was addressed by Bovis and its subcontractors.[17] Similarly, ACOE was not responsible for and had no direct involvement in, the debris removal operation at the WTC Site.[18,19] As ACOE Area Engineer David Leach testified at his deposition in connection with these matters, the City and its contractors were responsible for the removal of debris from the WTC Site.[20] As a result, the ACOE did not contract with any private concern for the removal of debris[21] and never assumed responsibility for the debris removal operations.[22]  The City and its contractors were in charge of the planning and execution of debris removal.[23]

---

[15] The U.S. Army Corps of Engineers (will) provide technical assistance to NYC on an as required basis as NYC requests this assistance." *See* CITY CMC-00033810 - Debris Monitoring Plan.

[16] FEMA-DC00013239.

[17] "The ACOE will provide technical assistance to NYC on an as required basis as NYC requests this assistance." *See* CityCM3-00033810.

[18] *See* Testimony of ACOE's David Leach, Area Engineer for Metropolitan New York, at p. 62.

[19] Id. at pp. 64-65. (Ex. 58).

[20] Deposition Transcript of David Leach, US Army Corps of Engineers, dated September 16th 2005, pp. 25-26:

> Q:    Do you know if anyone from the Corps had any responsibilities for cleanup activities, remediation, debris removal at the WTC Site.
>
> A.    The Corps of Engineers, they were not responsible but they were providing support services to the recovery operation at the World Trade site?

[21] *Id.* at pp. 69-70.

[22] *Id.* at p. 85.

[23] *Id.*

247.    The Environmental Protection Agency ["EPA"] neither controlled nor supervised the work done at the World Trade Center Site. As was the case with OSHA and FEMA, the EPA's involvement at the WTC Site in the days and weeks after September 11, 2001, was minimal and only advisory.[24] The New York City Department of Health ["DOH"] independently performed air testing at the WTC site, but failed to disclose the true results of the testing to the workers and the public about the dangers present at the site.[25] A letter from the USEPA to NYCDOH establishes that the EPA had no control over operations at the WTC Site.[26] Thus, to the extent that the City, through the DDC and the DOH, consulted with federal agencies about environmental safety and health issues at the WTC site throughout the recovery effort, the input of the federal government was merely advisory.

### B.    THE DEFENDANTS ARE NOT ENTITLED TO IMMUNITY UNDER THE SDEA.

248.    Any alleged immunity claimed by the Defendants under State Emergency Defense Act ("SDEA")[27] must fail.

249.    The New York Court of Appeals has made clear that the SDEA – a hold over from the Cold War that has been largely replaced by the Disaster Act – provides no immunity to private companies, like the contractor defendants, that provide services pursuant to a contract, rather than under the compulsion of the statute. Moreover, the SDEA provides immunity even to governmental actors only to the extent that a plaintiff's injury is caused by the defendant's good

---

[24] Applicable federal statutes and regulations "do not obligate (the) EPA to respond to a given emergency, thereby allowing for local agencies to lead a response… ." *See* WTCP/PA-CMO3-0000280: *EPA's Response to the WTC Center Collapse; Office of the EPA Inspector General*.

[25] *See* Deposition of Isaac Weisfuse, M.D, September 16, 2005, at pp. 69-70.

[26] "We do not have the authority to enforce the worker health and safety policies for non EPA/USCG employees." *See* CityCM3-00007585-CityCM3-00007586.

[27] New York State Defense Emergency Act, L. 1951, c. 784 (codified as amended at Unconsolidated Laws §9101 *et seq.*)

faith efforts to comply with a law relating to civil defense, or an order issued under the SDEA itself. Unconsol. Law § 9193. In this case, the defendants can identify no such law, compliance with which resulted in the Plaintiff's injuries, nor can the defendants claim that their tortious conduct arose from their compliance with any order issued pursuant to the SDEA.

250.    In addition, the SDEA excludes immunity for actions not taken in good faith and the defendants cannot establish that their persistent and knowing violations of important worker safety protections constituted good faith conduct within the meaning of the SDEA.

251.    In any case, the SDEA's immunity provision itself provides an exception that would permit the Plaintiff to pursue their claim even if the SDEA otherwise were to apply. That exception provides that nothing in the SDEA shall preclude an individual from seeking compensation of benefits, such as those provided to injured workers under a worker's compensation system. *See* Unconsol. Law § 9193(2). The system of compensation created by the ATSSSA falls within the plain terms of that exception, creating a process for providing benefits to injured workers through funds set aside by the federal government precisely for that compensatory purpose.

252.    Any argument by the City that it acted in good faith pursuant to the SDEA is unsupported by any evidence that the SDEA was even ever invoked. Without such evidence, an argument by the City that it acted in good faith carrying out, complying with or attempting to comply with any law, rule, regulation, or order duly promulgated or issued pursuant to the SDEA is irrelevant on its face.

253.    Further, the Plaintiff's injuries are the result of the defendants' failure to act in good faith during the cleanup operations at the WTC disaster site, disqualifying defendants for any immunity under the SDEA.

i. **The World Trade Center Buildings Contained Many Substances Known To Be Hazardous When Ingested, Inhaled or Contacted.**

254.     The City, through its agencies, agents, and contractors, was aware that a need for protection from hazardous particulate matter, fumes and dust existed at the WTC Site.

255.     The dust and particulate matter in and around the WTC Site was not safe for the Plaintiff to ingest, inhale, contact, absorb or touch, and the defendants knew or had reason to know these facts, yet failed to communicate the information to the workers, including Plaintiff, in and around the WTC site. The information about the dangers that actually existed at the WTC Site was not provided to treating physicians nor to the rescue, recovery, inspection, repair, or fire, police, or other workers at the site, including the plaintiff.

256.     In the weeks and months following the 9/11 disaster, many environmental tests were conducted, with results evidencing a highly hazardous work environment that were provided to the defendants or that were available to them. Days after September 11, 2001, the New York Environmental Law & Justice Project sent dust samples from several lower Manhattan locations to two respected independent laboratories. One such sample showed a 90% fiberglass content, indicative of a high rate of contamination.[28] Shortly after September 11, 2001, tests conducted by the United States Geological Survey ("USGS") determined that the dust at the WTC Site was highly caustic and thus capable of burning moist tissue in the throat, eyes, and nasal passages. This dust was determined to have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and comparable to ammonia. Some of the dust samples taken by the

---

[28] *See* Juan Gonzalez, "Health Hazards in Air Worry Trade Center Workers," *Daily News* (September 28, 2001); Juan Gonzalez, *Fallout.*, pub., The New Press, N.Y., N.Y., 2002, at p. 6. The sample was taken at the corner of Church and Vesey Streets, at the northeast corner of the WTC Site.

USGS on September 17-18, 2001, registered higher than 11.0 on the pH scale—this level is as caustic as liquid drain cleaners.[29]

### ii.   Although the City, State, and Federal Laws required Defendants to Protect the Workers from Hazardous Materials, these Rules, Regulations and Statutes Were Largely Ignored.

257.   The City and its Contractors were responsible for compliance with all of the applicable federal, state and local statutes and regulations relating to worker safety.

258.   OSHA surveillance reports that were issued and available to the City, the Port Authority, the WTC Defendants and the contractors repeatedly reported compliance rates for personal protective equipment at rates well below the acceptable rate.[30] The respirator compliance was so far below acceptable rates as to amount to a "willful violation" under OSHA's standards and the respirator compliance was so far below acceptable rates for so long as to amount to bad faith.

259.   OSHA regulations define willful conduct as "an intentional violation of the Act or plain indifference to its requirements." Pursuant to OSHA regulations, the employer committed an intentional and knowing violation if an employer representative was aware of the requirements of the Act, or the existence of an applicable standard or regulation, was also aware of a condition or practice at the work site that violated those requirements, and did not abate the hazard, condition or practice. An intentional and knowing violation is also demonstrated where

---

[29] *See* Roger Clark, *et al.*, "Environmental Studies of the World Trade Center Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., *et al.*, "Heath and Environmental Consequences of the World Trade Center Diaster, "*Envtl Health Perspectives* 112(6):73139, 732 (May 2004), at p.16.

[30] For example, during OSHA observations from September 21, 2001 through October 7, 2001 OSHA noted a personal protective equipment compliance rate of 27 percent. Applying this rate to all of the workers at the WTC Site demonstrates that there were potentially thousands of workers working at the WTC Site without the proper personal protective equipment, and, more to the point, that the City and its Contractors, the very entities responsible for the workers' safety, knew about it.

an employer representative was not aware of the requirements of the Act or standards, but was aware of a comparable legal requirements (*e.g.,* state or local law) and was also aware of the condition or practice in violation of that requirement, and did not abate the hazard, condition or practice.

260.   Even though hazardous conditions existed at the WTC site, which necessitated Personal Protective Equipment ("PPE") use, the Defendants failed to provide proper PPE to Plaintiff or to monitor or enforce compliance with PPE use by workers on the site(s).

261.   Bovis Lend Lease was aware that workers at the Site were not regularly wearing respirators. Bovis did nothing about this problem.

262.   Although there were numerous reports notifying the City and its contractors that workers at the World Trade Center Site, like Plaintiff, were not complying with the required PPE, the City and its contractors took no measures to compel workers to improve compliance with PPE usage. The City and its contractors refused to follow and comply with the applicable industrial codes.

263.   Complying with the laws pursuant to the EH&S plan was not discretionary, nor was compliance with New York State Labor Law §§ 200, 241 and 241(6), nor was compliance with OSHA 29 CFR §1910.132, OSHA 29 CFR §1962, or 12 NYCRR 23 *et seq.*

264.   The construction, excavation and demolition work that was being performed was not constructed, shored, equipped, guarded, arranged, operated and conducted so as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such place.[31] Defendants failed to provide protective equipment, including personal protective equipment for eyes, face, head and extremities, protective clothing, respiratory

---

[31] New York State Labor Law § 241 (6)

devices, and protective shields and barriers.[32] Health and safety protection for the workers on the WTC and related sites, including the Plaintiff, were required pursuant to 12 NYCRR 23, *et seq.*, and 12 NYCRR 12, *et seq.*

### VII.  LISTED DEFENDANTS AGAINST WHOM LIABILITY IS ALLEGED

265.    As stated *supra*, the City, through the DDC, assumed overall responsibility for health and safety of those lawfully present at the WTC site and was the General Contractor that hired the four CMs.

266.    Notwithstanding the City's role at the World Trade Center Site, the PA retained control of the site as well.

267.    The PA never relinquished any of its property interests in the World Trade Center site.

268.    The PA provided the direction, guidance and advice to the City with response to debris removal and the geography and design of the World Trade Center.

269.    Employees of the PA were active participants in safety oversight at the World Trade Center Site.

270.    The PA was one of the entities responsible for implementation, enforcement and compliance with all aspects of the WTC Environmental Health and Safety Plan.

271.    The PA Police Department controlled access to the WTC site by workers and others lawfully present.

272.    The PA collected safety compliance information for work at the WTC site.

---

[32] OSHA 29 CFR 1910.132 (a)

273.    Aside from the issuing of permits, and governing site access, employees of the PA assisted in the decision making process, controlling and directing many aspects of the work performed at the World Trade Center site, including the implementation of the WTC Environmental Health and Safety Plan, and monitoring occupational and environmental safety and health, including respiratory protection.

274.    Tully, one of the CMs hired by the City, assumed this health and safety responsibility for the eastern quadrant of the site, known as "Zone 1", along with being responsible for the supervision of its subcontractors. Bovis, one of the CMs hired by the City, assumed this health and safety responsibility for the southwest quadrant of the site, known as "Zone 2", along with being responsible for supervision of its subcontractors. AMEC, one of the CMs hired by the City, assumed this health and safety responsibility for the northwest quadrant of the site, known as "Zone 3", along with being responsible for the supervision of its subcontractors.

275.    Turner performed its work for the City at the World Trade Center Site pursuant to a joint venture agreement with Plaza. The name of that joint venture was Turner/Plaza. Turner/Plaza, one of the CMs hired by the City, assumed this health and safety responsibility for the northern quadrant of the site, known as "Zone 4", along with being responsible for the supervision of its subcontractors.

276.    The following defendants were subcontractors of Tully in Zone 1, in which Plaintiff worked, and as such were each also required to comply with all local, state, and federal laws along with the WTC EH&S Plan:

A. Russo Wrecking, Inc.; Brer-Four Transportation; Buro Happold
Consulting Engineers, PC; C. B. Contracting Corp.; Dakota Demo-
Tech; Diamond Point Excavating Corporation; DMT Enterprise,
Inc.; E.J. Davies, Inc.; En-Tech Corporation; Evergreen Recycling

of Corona; Ewell W. Finley, P.C.; Fleet Trucking, Inc.; FTI
Trucking; Gilsanz Murray & Steficek, LLP; Goldstein Associates
Consulting Engineers PC; Hallen Welding Service, Inc.; Hudson
Meridian Construction Group LLC; J.P. Equipment & Rental
Materials, L.L.C.; Laquilla Construction, Inc.; Leslie E. Robertson
Associates, R.L.L.P.; Liberty Mutual Group; Lockwood Kessler &
Bartlett, Inc.; Lucius Pitkin, Inc.; LZA Technology – A Division of
Thornton Tomasetti; Manafort Brothers Incorporated; Mazzocchi
Wrecking Inc.; Moretrench American Corp.; MRA Engineering
P.C.; Mueser Rutledge Consulting Engineers; Nacirema Industries
Inc.; Nicholson Construction Company; Pro Safety Services Inc.;
PT&L Contracting Corp.; Robert L Gerosa, Inc; Royal GM Inc.;
SAB Trucking, Inc.; Safeway Environmental Corp.; Silverite
Contractors (Contracting Corporation); Skidmore, Owings &
Merrill LLP; Survivair; Tucci Equipment Rental Corporation;
Tully Construction Co., Inc.; Tully Environmental, Inc.(A/K/A
EROC - Evergreen Recycling of Corona); Vollmer Associates
LLP; Weidlinger Associates P.C.; and Yonkers Contracting
Company, Inc. (Collectively known as "Tully's Subcontractors")

277.    The following defendants were subcontractors of Bovis Lend Lease in Zone 2, in

which Plaintiff worked, and as such were each also required to comply with all local, state, and

federal laws along with the WTC EH&S Plan:

A. Russo Wrecking, Inc.; AMEC Construction Management, Inc.;
Anthony Cortese Specialized Hauling, LLC; Atlantic Heydt
Corporation; Brer-Four Transportation; Buro Happold Consulting
Engineers, PC; C. B. Contracting Corp.; Cantor Seinuk Group;
Dakota Demo-Tech; Diamond Point Excavating Corporation;
DMT Enterprise, Inc.; E.J. Davies, Inc.; Evergreen Recycling of
Corona; Ewell W. Finley, P.C.; FTI Trucking; Gilsanz Murray &
Steficek, LLP; Goldstein Associates Consulting Engineers PC;
Hudson Meridian Construction Group LLC; J.P. Equipment &
Rental Materials, L.L.C.; Koch Skanska, Inc.; La Strada General
Contracting Corp.; Laquilla Construction, Inc.; Leslie E. Robertson
Associates, R.L.L.P.; Liberty Mutual Group; Lockwood Kessler &
Bartlett, Inc.; Lucius Pitkin, Inc.; LZA Technology – A Division of
Thornton Tomasetti; Manafort Brothers Incorporated; Mazzocchi
Wrecking Inc.; Moretrench American Corp.; MRA Engineering
P.C.; Mueser Rutledge Consulting Engineers; Nacirema Industries
Inc.; New York Crane & Equipment Corp.; Nicholson
Construction Company; Pro Safety Services Inc.; Robert Silman
Associates, P.C.; SAB Trucking, Inc.; Safeway Environmental
Corp.; Semcor Equipment & Manufacturing Corp.; Silverite

Contractors (Contracting Corporation); Simpson, Gumpertz & Heger, Inc.; Skidmore, Owings & Merrill LLP; Survivair; Vollmer Associates LLP; Weidlinger Associates P.C.; and York Hunter Construction (Collectively known as "Bovis' Subcontractors")

278.   The following defendants were subcontractors of AMEC in Zone 3, in which

Plaintiff worked, and as such were each also required to comply with all local, state, and federal

laws along with the WTC EH&S Plan:

A. Russo Wrecking, Inc.; AMEC Earth & Environmental, Inc.; Atlantic Heydt Corporation; Berkel & Company Contractors, Inc.; Big Apple Wrecking & Construction Corp.; Breeze Carting, Inc.; Breeze National, Inc.; Brer-Four Transportation; Buro Happold Consulting Engineers, PC; C. B. Contracting Corp.; Cord Contracting Co., Inc.; Dakota Demo-Tech; Diamond Point Excavating Corporation; DMT Enterprise, Inc.; E.J. Davies, Inc.; Eagle One Roofing Contractors, Inc.; Ewell W. Finley, P.C.; FTI Trucking; Gilsanz Murray & Steficek, LLP; Goldstein Associates Consulting Engineers PC; HP Environmental, Inc.; Hudson Meridian Construction Group LLC; J.P. Equipment & Rental Materials, L.L.C.; Koch Skanska, Inc.; La Strada General Contracting Corp.; Laquilla Construction, Inc.; Leslie E. Robertson Associates, R.L.L.P.; Liberty Mutual Group; Lockwood Kessler & Bartlett, Inc.; Lucius Pitkin, Inc.; LZA Technology – A Division of Thornton Tomasetti; Mazzocchi Wrecking Inc.; Moretrench American Corp.; MRA Engineering P.C.; Mueser Rutledge Consulting Engineers; Nacirema Industries Inc.; New York Crane & Equipment Corp.; Nicholson Construction Company; Peter Scalamandre and Sons, Inc.; Pro Safety Services Inc.; SAB Trucking, Inc.; Silverite Contractors (Contracting Corporation); Simpson, Gumpertz & Heger, Inc.; Skidmore, Owings & Merrill LLP; Tomasetti Group; Vollmer Associates LLP; Weeks Marine, Inc.; Weidlinger Associates P.C.; Whitney Contracting; and Wolkow Braker Roofing Corp. (Collectively known as "AMEC's Subcontractors")

279.   The following defendants were subcontractors of Turner/Plaza in Zone 4, in

which Plaintiff worked, and as such were each also required to comply with all local, state, and

federal laws along with the WTC EH&S Plan:

A. Russo Wrecking, Inc.; Brer-Four Transportation; Buro Happold Consulting Engineers, PC; C. B. Contracting Corp.; Canron

Construction Corp.; Dakota Demo-Tech; Diamond Point
Excavating Corporation; Diversified Carting, Inc.; DMT
Enterprise, Inc.; E.J. Davies, Inc.; Eagle Leasing & Industrial
Supply; Francis A. Lee Company; FTI Trucking; Gilsanz Murray
& Steficek, LLP; Goldstein Associates Consulting Engineers PC;
HP Environmental, Inc.; Hudson Meridian Construction Group
LLC; J.P. Equipment & Rental Materials, L.L.C.; Koch Skanska,
Inc.; Laquilla Construction, Inc.; Leslie E. Robertson Associates,
R.L.L.P.; Liberty Mutual Group; Lockwood Kessler & Bartlett,
Inc.; Lucius Pitkin, Inc.; LZA Technology – A Division of
Thornton Tomasetti; Mazzocchi Wrecking Inc.; Moretrench
American Corp.; MRA Engineering P.C.; Mueser Rutledge
Consulting Engineers; Nacirema Industries Inc.; Nicholson
Construction Company; Pinnacle Environmental Corp.; Plaza
Construction Corp.; Pro Safety Services Inc.; PT&L Contracting
Corp.; Rodar Enterprises, Inc.; SAB Trucking, Inc.; Safeway
Environmental Corp.; Seasons Industrial Contracting; Simpson,
Gumpertz & Heger, Inc.; Tishman Construction Corporation of
New York; Torretta Trucking, Inc.; Total Safety Consulting, LLC;
Ultimate Demolition/CS Hauling (Joint Venture); Vollmer
Associates LLP; and Weidlinger Associates P.C. (Collectively
known as "Turner/Plaza's Subcontractors")

280.    The City, PA Tully and Tully's Subcontractors; Bovis and Bovis' Subcontractors;

AMEC and AMEC's Subcontractors; Turner/Plaza and Turner/Plaza's Subcontractors were each

individually and all required to comply with all local, state and federal laws along with the WTC

EH&S Plan.

281.    Since no laws were suspended, the City, PA, Tully, Tully's Subcontractors,

Bovis, Bovis' Subcontractors, AMEC, AMEC's Subcontractors, Turner/Plaza and Turner/Plaza's

Subcontractors, were each individually and all required to comply with the following:

Occupational Safety & Health Standards as promulgated by the Occupational Safety and Health

Administration, including, but not limited to Article 1926, 29 U.S.C. §§ 654 *et. seq.*; the

provisions of 29 C.F.R. §1910.38, §1910.132-134, §1910.146, §1910.120; §1910.156;

§1910.1001, §1910.1025, §1910.1027, §1910.1000 and §1910.1200; the provisions of the U.S.

Department of Welfare; New York State Labor Law, including, but not limited to: §200, §240

and §241(6); Article 2, §27-a, Article 28, §878; 12 NYCRR §820.4 and §23-1.8; The Industrial

Code, including, but not limited to: §23-1.5, §23-1.7, §23-1.8, §23-1.9, §23-1.25, §23-1.26, §23-

2.1; New York State General Municipal Law §205-a and/or §205-e; and other applicable rules,

regulations and statutes.

282.    On or about September 11, 2001 and continually thereafter, the City, PA, Tully

and Tully's Subcontractors; Bovis and Bovis' Subcontractors; AMEC and AMEC's

Subcontractors; Turner/Plaza and Turner/Plaza's Subcontractors were each and all aware of the

danger of exposure to toxic substances, both known and unknown, in the air and dust at the

World Trade Center Site and/or other buildings or locations or portions thereof.

283.    At all relevant times, it was the duty of the City, PA, Tully and Tully's

Subcontractors; Bovis and Bovis' Subcontractors; AMEC and AMEC's Subcontractors;

Turner/Plaza and Turner/Plaza's Subcontractors to provide for the safety, a reasonably safe place

to work, protection and well-being of persons lawfully working at the World Trade Center Site

and/or other buildings or locations or portions thereof and performing the Work.

284.    At all relevant times, it was the duty of the City, PA, Tully and Tully's

Subcontractors; Bovis and Bovis' Subcontractors; AMEC and AMEC's Subcontractors;

Turner/Plaza and Turner/Plaza's Subcontractors to monitor air quality at the World Trade Center

Site and/or other buildings or locations or portions thereof, before, during and after the

commencement of said Work.

285.    At all relevant times, it was the duty of the City, PA, Tully and Tully's

Subcontractors; Bovis and Bovis' Subcontractors; AMEC and AMEC's Subcontractors;

Turner/Plaza and Turner/Plaza's Subcontractors, to provide, furnish and/or ensure the use of

safe, suitable and adequate personal protective equipment including, but not limited to:

protective clothing, masks, respirators, cleaning supplies and decontamination equipment, as well as safe work equipment, safety devices and/or apparatus for all persons lawfully participating in the rescue, recovery and debris removal effort at the Work at the World Trade Center Site and/or other buildings or locations or portions thereof.

286.    Plaintiff was employed as a fire fighter for the Fire Department of New York ("FDNY") during his work following the events of September 11, 2001. Plaintiff worked from approximately September 11, 2001 through May 30, 2002 for approximately twelve (12) hours per day throughout the WTC site for total of approximately fifteen (174) days.

287.    Additionally, Plaintiff worked at 130 Liberty Street, the Deutsche Bank Building for approximately 1 day in August 2007.

288.    Plaintiff was not provided with the proper respiratory equipment while working at the 130 Liberty Street.

289.    Plaintiff was not provided with the proper respiratory equipment while working at the WT Site.

290.    As a result of Plaintiff's exposure to the environment at the WTC site ant 130 Liberty Street, Plaintiff wad diagnosed with Lymphoma.

291.    Plaintiff's work at the WTC Site during this time consisted of bucket brigade and site perimeter security, digging through the WTC pile debris, search, rescue and recovery in all four Zones/quadrants.

292.    Plaintiff was lawfully present in all four Zones/quadrants of the WTC Site pursuant to his employment with the FDNY. These zones were within the control of the City, the PA; Tully and Tully's Subcontractors; Bovis and Bovis' Subcontractors; AMEC and AMEC's Subcontractors and Turner/Plaza and Turner/Plaza's Subcontractors.

293.    Plaintiff was not provided with any respiratory protection between approximately September 11, 2001 and approximately May 30, 2002 at the WTC site.

294.    Plaintiff was never fit-tested for the respirator or provided any instruction or training on its use.

295.    Defendants did not provide the Plaintiff with environmental health and safety training nor require Plaintiff's attendance at any meetings to discuss environmental health and safety training.

296.    Defendants did not warn Plaintiff of the hazardous conditions and dangerous air quality at the WTC Site and failed to warn Plaintiff that working at the WTC Site without first donning proper PPE would likely be injurious to his health.

297.    Thus, at all relevant times, in violation of applicable city, state and federal statutes, laws, rules and regulations, Defendants breached their aforementioned non-delegable duties and failed to comply therewith by *inter alia*, failing to properly warn Plaintiff of the dangerous levels of toxins, contaminants, teratogens and other harmful elements in the air, smoke, fumes, dust and other surface or airborne particulate matter and on the surfaces at the World Trade Center Site and/or other buildings or locations or portions thereof; failed to establish and implement a proper and/or effective respiratory protection program and/or eye protection program; failed to provide Plaintiff with appropriate respiratory protection, eye protection, protective clothing and/or all equipment necessary to protect his their health; failed to protect Plaintiff from exposures and or contamination by known and unknown contaminants; failed to prevent and/or minimize atmospheric contamination; failed to use effective engineering controls; failing to provide appropriate surveillance and/or inspection of the conditions at the World Trade Center Site and/or other buildings or locations or portions thereof, the work site

and/or the Work and/or to monitor the degree of Plaintiff's exposure, Defendants knew or should have known would detrimentally affect Plaintiff's safety and/or health and these defendants allowed such dangers to continue unabated and without protection to Plaintiff from the same; created unreasonable dangers to Plaintiff; and failed to reflect and/or apply any subsequent updates, as necessary.

298.    As a consequence of the Defendants' aforementioned breaches of duty, Plaintiff was exposed to fumes, smoke, toxins, contaminants, dust, surface and airborne particulate matter and other harmful airborne products at the World Trade Center Site and/or other buildings or locations or portions thereof, directly and proximately causing serious injuries.

299.    Specifically, Plaintiff was diagnosed with lymphoma and other respirator injuries on or about June 19, 2019.

300.    Said toxic exposures and the resulting injuries Plaintiff suffered occurred as a direct and proximate result of and solely and wholly by reason of the carelessness, negligence, gross negligence, wanton and/or willful disregard and/or acts on the part of Defendants, without any fault, want, care, culpable conduct and/or negligence on the part of the Plaintiff, or Derivative Plaintiff, if any, contributing thereto.

301.    By reason of the foregoing, the Plaintiff seeks compensatory and exemplary damages in a sum to be determined by a jury.

### VIII.  CAUSES OF ACTION
#### A.  AS AND FOR A FIRST CAUSE OF ACTION: BASED UPON COMMON LAW NEGLIGENCE

302.    Plaintiff repeats, reiterates and realleges the allegations set forth above with the same force and effect as if set forth more fully at length herein and further alleges the following.

303.    The aforesaid exposure and the resulting injuries sustained by the Plaintiff was caused by the negligence, gross negligence and recklessness of Defendants without the Plaintiff contributing thereto.

304.    By reason of the foregoing, the Plaintiff seeks compensatory and exemplary damages in a sum to be determined by a jury.

### B.  AS AND FOR A SECOND CAUSE OF ACTION: VIOLATIONS OF NEW YORK LABOR LAW SECTIONS 200, 241(6)

305.    Plaintiff repeats, realleges and reiterates each and every allegation set forth above as if fully set forth herein and further state as follows.

306.    Defendants, had an obligation, in accordance with Section 200 of the Labor Law of the State of New York, to provide a reasonably safe place to work for persons lawfully performing work at the WTC Site.

307.    Defendants had obligations under Section 200 of the Labor Law because:

    a.    they performed construction, demolition, and/or debris removal work for the operations at the WTC Site; and/or

    b.    they had actual or constructive notice of the dangerous conditions of the Site, as set forth above.

308.    Defendants violated their duty under Section 200 of the Labor Law by failing to provide a reasonably safe place to work for persons lawfully performing work at the WTC Site. Among other things, Defendants failed to ensure:

    a.    that the Plaintiff was provided adequate personal protective equipment, including, but not limited to: protective clothing, masks, respirators, and goggles;

    b.    that the Plaintiff was provided other necessary work equipment, safety devices, and/or apparatus, as well as cleaning supplies and decontamination equipment;

60

c.     adequate workplace safety rules – including rules requiring the use of personal protective equipment – were issued, enforced, and complied with;

d.     adequate monitoring air quality at the Site before, during and after the commencement of the Plaintiff's work at the Site was performed;

e.     that the Plaintiff was notified of the dangerous substances in the air, dust, and on the surfaces at the Site;

f.     that atmospheric contamination was minimized or avoided;

g.     that effective engineering controls were implemented at the Site;

h.     that the conditions at the Site and/or the Plaintiff's particular work areas therein were subject to appropriate safety surveillance and/or inspection;

i.     that the Plaintiff's exposure to dangerous substances, which the Prime Contractor defendants knew or should have known would detrimentally affect the safety and/or health of Plaintiff, was adequately monitored.

309.   As a result of Defendants' violation of Section 200 of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth above.

310.   The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of Defendants without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

311.   Defendants are jointly and severally liable with the other defendants in this case for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR §1601, because; Defendants acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's (Plaintiff's) injuries (see CPLR 1602(11)) and with reckless disregard for the safety of others (see CPLR 1602(7)).

312.     Defendants, at all relevant times, had a non-delegable duty under Labor Law §241(6) of the State of New York, to ensure that all areas in which construction, excavation or demolition work was being performed were so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

313.     Defendants had obligations under Section 200 of the Labor Law because:

    a.    they performed construction, demolition, and/or debris removal work for the operations at the Site; and/or

    b.    they had actual or constructive notice of the dangerous condition of the Site, as set forth above.

314.      Defendants violated their obligations under Section 241(6) of the Labor Law by failing to ensure that persons frequenting the premises or performing the work at that the Site, were provided with a workplace that was so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety. Defendants failed to ensure compliance at the workplace with applicable provisions of the Industrial Code, including, but not limited to: §12.1, §12.2, §12.4, §12.5, §23-1.5, §23-1.7, §23-1.8, §23-1.9, §23-1.25, §23-1.26, §23-2.1.

315.     As a result of Defendants' violation of Section 241(6) of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth above.

316.     The Plaintiff's injuries are the direct and proximate result of, and solely and wholly by reason of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of Defendants, without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

317.     Defendants are jointly and severally liable with the other defendants in this case for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR §1601, because the Defendants:

      a.      violated a provision of Article 10 of the Labor Law, specifically Section 241(6) (see CPLR 1602(8));

      b.      owed the Plaintiff a non-delegable duty of care (see CPLR 1602(2)(iv));

      c.      are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiff's damages (see CPLR 1602(2)(iv));

      d.      acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries (see CPLR 1602(11)); and

      e.      acted with reckless disregard for the safety of others (*see* CPLR 1602(7)).

### C.  AS AND FOR A THIRD CAUSE OF ACTION: VIOLATIONS OF GENERAL MUNICIAPAL LAW SECTION 205-A

318.     Plaintiff repeats, reiterates and realleges the above paragraphs with the same force and effect as set forth more fully at length herein and further alleges the following.

319.     At all relevant times, the Plaintiff was a fire fighter with the FDNY.

320.     As a result of accidental exposure to the dangerous substances at the World Trade Center site, the Plaintiff suffered injuries.

321.     The aforementioned accident occurred directly or indirectly as a result of the City of New York's neglect, omission, or culpable negligence in failing to comply with the requirements of statutes, ordinances, rules, orders and requirements of the federal, state, county village, town, or city governments of any and all their departments, divisions and bureaus. Among other things, the City failed to comply with the statutes, rules and regulations identified above, as well as:

a) New York Labor Law § 27-a, specifically protecting public employees from hazardous workplace conditions.

b) New York Labor Law § 241(6) , establishing status based liability for owners and contractors who fail to ensure the safety of workers on their property.

c) 29 CFR § 1910.132, general safety requirements.

d) 29 CFR § 1910.133, eye and face protection.

e) 29 CFR 1910.134, respiratory protection.

f) 29 CFR § 1910.146, permit-required confined spaces.

g) 29 CFR 1010.120, hazardous waste operations and emergency response.

h) The safety rules and orders governing operations at the World Trade Center site.

## IX.   DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

322.   Plaintiff repeats, reiterates and realleges the above paragraphs with the same force and effect as if set forth more fully at length herein and further alleges the following.

323.   This action falls within one or more of the exceptions set forth in New York CPLR 1602.  The limitations on liability set forth in CPLR 1601 do not apply by reason of the exemptions set forth in CPLR 1602(2) and (7).

324.   Pursuant to CPLR 1602(2)(iv), Defendants are jointly and severally liable for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that Defendants owed the Plaintiff a non-delegable duty of care.

325.   Pursuant to CPLR 1602(7), Defendants are jointly and severally liable for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that Defendants acted with reckless disregard for the safety of others.

326.    Pursuant to CPLR 1602(2)(iv), the Defendants are jointly and severally liable for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that Defendants are vicariously liable for the negligent acts and omissions of each other and/or others who caused or contributed to the Plaintiff's damages.

327.    Pursuant to CPLR 1602(11), the Defendants are jointly and severally liable for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of the CPLR 1601, by reason of the fact that Defendants acted knowingly or intentionally and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries.

328.    Pursuant to CPLR 1602(8), Defendants are jointly and severally liable for all of Plaintiff's damages, including, but not limited to Plaintiff's non-economic loss, irrespective of the provisions of CPLR 1601, by reason of the fact that Defendants should here be held liable pursuant to Article 10 of the Labor Law.

## X.   PRAYER FOR RELIEF

329.    WHEREFORE, judgment is demanded against the Defendants, jointly and severally, in a sum to be determined by a jury, representing compensatory and exemplary damages.

## XI.   JURY TRIAL DEMAND

330.    Plaintiff demands that all issues of fact in this case be tried before a properly

empanelled jury.


DATED: JUNE 19, 2020                         NAPOLI SHKOLNIK PLLC
                                             *Attorneys for Plaintiff*


                                     By: ___/s/_____
                                             Christopher R. LoPalo (CL-6466)

                                     400 Broadhollow Road, Suite 305
                                     Melville, NY 11740
                                     (212) 397-1000